UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-21734-CIV-SINGHAL

UBALDINO ROELY
MERIDA DOMINGUEZ,

      Petitioner,

v.

MARKWAYNE MULLIN,[1] Secretary
of the Department of Homeland Security, *et al.*,

      Respondents.

_____/

## **ORDER**

**Petitioner** Ubaldino Roely Merida Dominguez is a native and citizen of Guatemala who entered the United States on March 1, 2004.  (DE [14-1]).  He was not inspected upon entrance.  *Id.*  After two decades passed, he filed an application for asylum, which was received on March 15, 2025.  (DE [1-6]).

On September 9, 2025, Florida Highway Patrol conducted a traffic stop on Petitioner.  (DE [14-2]).  During the traffic stop, Florida Highway Patrol suspected that Petitioner was present in the United States illegally and contacted Border Patrol about Petitioner's status.  *Id.*  After Border Patrol informed Florida Highway Patrol that Petitioner was illegally present in the United States, the highway patrol arrested Petitioner.  *Id.*  He was charged with being present in the country without proper authorization and documentation.  (DE [14-1]).  The Department of Homeland Security then placed Petitioner in removal proceedings.  *Id.*  Petitioner then filed the present Petition for Writ

---

[1] Since this Petition was filed, Markwayne Mullin has replaced Kristi Noem as Secretary.

of Habeas Corpus, alleging that he is entitled to release or a bond hearing.  (DE [1]).  The government responded, (DE [8]), and this Court held a hearing on the Petition.  (DE [20]).  At the hearing, Petitioner's counsel made excellent arguments.  But despite his quality advocacy, the Court determines that Petitioner is lawfully detained, and the Petition (DE [1]) is denied.

## I.     LEGAL STANDARD

District courts have authority to grant writs of habeas corpus.  28 U.S.C. § 2241(a).  Habeas corpus is fundamentally "a remedy for unlawful executive detention."  *Munaf v. Geren,* 553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law.  *See* 28 U.S.C. § 2241(c)(3).  The court's jurisdiction extends to challenges involving immigration-related detention.  *See Zadvydas v. Davis,* 533 U.S. 678, 687 (2001).

## II.     DISCUSSION

### A.  Jurisdiction

Before addressing the merits of the Petition, the Court must address Respondents' arguments that the Court lacks jurisdiction under 8 U.S.C. § 1252.  As this Court has explained previously, 8 U.S.C. § 1252(g) and § 1252(b)(9) only strip the Court of jurisdiction to hear specific challenges to removal.  *See Acosta Gonzalez v. Noem*, — F. Supp. 3d —, 2026 WL 1077836, at *1-2 (S.D. Fla. Apr. 20, 2026).  These provisions do not prohibit a court from hearing all challenges to detention.  *Id.*  The Supreme Court has made this clear:

> As we have said before, § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined.  And it is certainly not a bar where, as here, the parties are not challenging any removal proceedings.  Section 1252(g) is similarly narrow.

2

> That provision limits review of cases "arising from" decisions "to commence proceedings, adjudicate cases, or execute removal orders." § 1252(g).  We have previously rejected as "implausible" the Government's suggestion that § 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation.

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation modified).

Here, Petitioner is seeking release or a bond hearing pending his removal proceedings.  He does not challenge "an order of removal, the decision to seek removal, or the process by which removability will be determined."  *Id.*  Nor does Petitioner challenge "decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'"  *Id.* (quoting § 1252(g)).  Release pending an order of removal would not necessarily impede his removal proceedings.  *See, e.g.*, *Acosta Gonzalez*, 2026 WL 1077836, at *1-2.  The Court maintains jurisdiction over this matter.

B.  <u>Statutory Analysis</u>

The Court turns to Petitioner's statutory arguments.  Petitioner claims that he has been unlawfully detained without bond, and that he should be released under 8 U.S.C. § 1226.  This Court has previously explained that aliens present in the United States without admission are "applicants for admission" under 8 U.S.C. § 1225 and are therefore subject to mandatory detention under § 1225.  *See, e.g.*, *Morales v. Noem*, — F. Supp. 3d —, 2026 WL 236307, at *8 (S.D. Fla. Jan. 29, 2026); *Banchi v. Diaz*, No. 0:25-cv-62341 (S.D. Fla. Feb. 2, 2026); *Doria v. Warden, Broward Transitional Center*, No. 0:26-cv-60112 (S.D. Fla. Feb. 9, 2026).  Multiple courts of appeals have done the same.  *See Buenrostro-Mendez v. Bondi*, — F.4th —, 2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026); *Avila v. Bondi*, — F.4th —, 2026 WL 819258, at *4 (8th Cir. Mar. 25, 2026).  And other district courts have also reached the same conclusion.  *See, e.g.*, *Lopez v. Dir. of Enf't &*

*Removal Operations*, — F. Supp. 3d —, 2026 WL 261938, at \*7 (M.D. Fla. Jan. 26, 2026); *Weng v. Genalo*, 2026 WL 194248, at \*3 (S.D.N.Y. Jan. 25, 2026).  This case is no different.  Petitioner was not inspected, let alone admitted, and was therefore an applicant for admission.  (DE [14-1]).  As an applicant for admission, he is lawfully detained under § 1225.

Petitioner asks the Court to consider *Maldonado Bautista v. Noem*'s class action declaratory judgment.   *See* 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).   Petitioner concedes that the declaratory judgment was stayed outside of the Central District of California in *Maldonado Bautista v. Dep't Homeland Sec.*, No. 26-1044 (9th Cir. Mar. 6, 2026), but Petitioner requests that the Court consider the District Court's analysis as persuasive.  As discussed above, this Court reads § 1225 to apply to all applicants for admission, regardless of if they had been inspected or whether they were detained near the border.  The Court is not persuaded by *Maldonado Bautista*'s statutory analysis.  As for *Maldonado Bautista*'s class certification, the Court recently explained that class actions are not an appropriate mechanism in habeas proceedings.  *See Pleitez Calderon v. Ripa*, No. 26-60525 (S.D. Fla. Apr. 22, 2026).  Historically, class actions were not used in habeas proceedings.  *Id.*  Also, deciding the lawfulness of the detention of multiple individuals at once risks depriving them of due process.  *Id.*  The *Maldonado Bautista* Court seems to suggest that numerous persons can be handled collectively regardless of the individual faults or merits of each case.  If that were how the law worked we would not need judges.  The rationale of the *Maldonado Bautista* Court is not compelling.

C. <u>Fourth Amendment</u>

At the hearing, Petitioner's counsel argued that the Florida Highway Patrol's stop of Petitioner violated the Fourth Amendment.  Even if true, this Court cannot grant habeas

relief based on that allegation. "[T]he only relief available on habeas corpus is immediate release or discharge from the custody complained of, and courts have long recognized that an unlawful arrest, by itself, doesn't warrant release." *Buriev v. Warden, GEO, Broward Transitional Ctr.*, 2025 WL 2763202 (S.D. Fla. Sept. 26, 2025) (quotations omitted). Petitioner's Fourth Amendment argument is better raised in an action under 42 U.S.C. § 1983.

    D. <u>Administrative Procedure Act</u>

Petitioner next argues that the Department of Homeland Security ("DHS") violated the Administrative Procedure Act ("APA") by changing its detention policy without providing a reasoned explanation. Petitioner points to *Judulang v. Holder*, 565 U.S. 42, 55-56 (2011) for the proposition that an agency must base policy changes on reasoned decision making. That is true. *See Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (citation modified). But that is not the end of the story.

To address this argument, the Court needs to zoom out and examine administrative agencies more broadly. Administrative agencies are supposed to enforce the laws passed by Congress. Sometimes, this is simply just following and executing the text of the statute. But oftentimes, Congress has delegated policy-making discretion, beyond just pure enforcement, to the agencies.[2] *See Kisor v. Wilkie*, 588 U.S. 558, 569, (2019) ("Congress, we have pointed out, routinely delegates to agencies the power to

---

[2] It has been 90 years since the Supreme Court determined a delegation from Congress violated Article I, Section 8 of the Constitution. *See A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495 (1935).

implement statutes by issuing rules."). This usually looks like a statute explicitly directing an agency to make rules. *See State Farm*, 463 U.S. at 33 ("The Act . . . directs the Secretary of Transportation or his delegate to issue motor vehicle safety standards that shall be practicable, shall meet the need for motor vehicle safety, and shall be stated in objective terms.") (citation modified). There has recently been wide-ranging debate in the courts and the academy on the extent that Congress can delegate policymaking power. *See Gundy v. United States*, 588 U.S. 128, 157-59 (2019) (Gorsuch, J., dissenting) (calling for a narrow non-delegation test limiting delegations to rules filling up the details, rules hinging on executive fact finding, and rules fulfilling non-legislative responsibilities); *Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 606 U.S. 656 (2025) (upholding the broad intelligible principle test); Ilan Wurman, *Nondelegation at the Founding*, 130 Yale L.J. 1490 (2021). The constitutional limits on Congress's authority to delegate are outside of the scope of the Court's review today, but suffice it to say, Congress regularly does delegate authority to agencies to implement statutes. The APA and the courts have created a litany of requirements that agencies must follow when making policies and rules. One of these is the requirement from *State Farm* and *Judulang* that an agency's rule must be based on reasoned decision making.

But that principle does not apply here, because DHS did not engage in rule making. DHS simply executed the statute. Unlike the delegations just described above, DHS's role in enforcing § 1225 and § 1226 is quite limited. DHS is not directed to make rules or policies. Instead, DHS is simply directed on how and when it can detain certain aliens. In § 1225, DHS is given practically no discretion whatsoever.

Instead of changing a rule or policy, what DHS did change was enforcement. DHS, for decades, had essentially not been enforcing § 1225. Instead of detaining applicants

6

for admission under § 1225, DHS had been issuing warrants and offering bond under § 1226.   Since the Illegal Immigration Reform and Immigrant Responsibility Act was passed, DHS has recognized that Congress authorized the agency to detain applicants for admission, but for years the agency instead chose to offer them bond.  *See Executive Office for Immigration Review: Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum*, 62 Fed. Reg. 10312, 10333 (Mar. 6, 1997).   There the agency stated that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."  *Id.*  DHS made an enforcement choice to offer bond to applicants for admission under § 1226.  DHS could do that.  Section 1226 applies to all aliens.  *See Hernandez v. Krome N. Serv. Processing Ctr.*, — F. Supp. 3d —, 2026 WL 851402, at *4 (S.D. Fla. Mar. 25, 2026).

But DHS also could enforce § 1225 and detain applicants for admission.  So in 2025, when a new presidential administration chose to detain applicants for admission, DHS made a permissible enforcement decision.  This decision was not the result of rulemaking pursuant to a delegation from Congress—it was simply the executive's decision to enforce the law Congress had written.  Unlike when DHS engages in its own policy making, DHS does not need to explain its decision to enforce Congress's mandates.

Boiling this all down, DHS was not required to explain its decision because DHS did not engage in policy making.  Congress made the policy—albeit more than 25 years ago—and DHS only recently started enforcing that policy according to the plain and unambiguous text of the statute.

7

E. Due Process

Finally, the Court turns to Petitioner's due process arguments. Due process does not require that Petitioner be granted release or a bond hearing. *See, e.g.*, *Morales*, 2026 WL 236307, at *9. "[T]he Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore v. Kim*, 538 U.S. 510, 526 (2003). "[D]eportation proceedings 'would be vain if those accused could not be held in custody pending the inquiry into their true character.'" *Id.* at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021) ("[A]liens are not entitled to a bond hearing while they pursue withholding of removal.").

The government may also detain aliens post-removal order as long as is "reasonably necessary to secure removal." *Zadvydas,* 533 U.S. at 699. The Supreme Court has explained that for post-removal detention, after six months of detention and "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701. The Court applies the same analysis here to detention during removal proceedings. Since Petitioner has been detained for longer than six months, his detention is no longer presumed reasonable. But Petitioner still has the initial burden to show good reason why he is not likely to be removed in the near future. *Id.* While it is true that asylum applicants are not deportable to their home country until their application is adjudicated, this principle alone is not enough to meet Petitioner's burden. Two facts cut against simply lumping all asylum applicants into a "release for due process concerns" bucket. First, Petitioner filed his asylum application more than twenty years after arriving in America. And second, asylum

8

applicants are deportable to a third country pending resolution of their applications. Petitioner has not sufficiently shown good reason at this time to satisfy the due process analysis.

III.   CONCLUSION

For the reasons discussed above, the Court concludes that Petitioner's detention is lawful under 8 U.S.C. § 1225(b)(2).  Petitioner is not entitled to release or a bond hearing pending removal.  Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Petition (DE [1]) is **DENIED**.  The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 29th day of April 2026.

Copies furnished counsel via CM/ECF

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE